IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>KENNETH J. WISNIEWSKI, an individual, LILLIAN F. WISNIEWSKI, an individual, and EAGLE HOMES, LLC, an Illinois limited liability company,<br><br>Defendants. | No. 08 C 1976<br><br>Honorable Charles R. Norgle |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the Court is plaintiff Federal National Mortgage Association's ("Fannie Mae") motion for summary judgment. For the following reasons, the motion is granted.

## I. BACKGROUND[1]

### A. Facts

#### 1. The Original Fannie Mae Loan

On November 26, 2003, Eagle Homes – Prairie Springs, LLC ("Borrower"), in conjunction with a housing development project in Malta, Illinois (the "Project"), entered into a loan and security agreement with Fannie Mae (the "Original Fannie Mae Loan"), and executed a promissory note to Fannie Mae in the principal amount of $1,633,600 (collectively the "Original Loan Documents"). That same day, Fannie Mae also entered into a guaranty agreement (the

---

[1] Unless otherwise attributed, the Court takes all facts presented in this Opinion from the parties' Local Rule 56.1(a)(3) and 56.1(b)(3) Statements and Responses and notes the disputed facts within.

"Guaranty") with defendants Kenneth Wisniewski, Lillian Wisniewski and Eagle Homes, LLC (collectively the "Defendants").

Pursuant to the Guaranty, Defendants jointly and severally guaranteed "the full and prompt payment . . . of all amounts due with respect to the [promissory] [n]ote, and the observance and performance by the Borrower of all of the Borrower's obligations under the [Original Loan Documents]," as well as the "full and prompt payment . . . of all present and future liabilities and obligations of the Borrower to Fannie Mae of every kind and description . . . ." Am. Compl., Ex. A, at 2-3.

### 2. The Amended Fannie Mae Loan

On March 15, 2005, Borrower and Fannie Mae entered an amended and restated loan and security agreement (the "Amended Fannie Mae Loan") and executed an amended and restated promissory note (collectively the "Amended Loan Documents"), which amended and replaced the Original Loan Documents. Pursuant to the Amended Loan Documents, Fannie Mae made a "credit facility" available to the Borrower in the amount of $1,822,790. Under the terms of the Amended Loan Documents, Defendants reaffirmed the Guaranty and guaranteed Borrower's performance under the Amended Loan Documents. Defendants each signed the Amended Loan Documents.

Paragraph 5.15 of the Amended Fannie Mae Loan prohibits Borrower from encumbering the collateral Borrower granted to Fannie Mae pursuant to the Loan (the "Fannie Mae Collateral") and states in relevant part as follows:

> **No Further Encumbrances of Borrower's Property; No Additional Debt; No Sale.** The Borrower shall not hereafter mortgage, assign, convey, sell lease, pledge, or otherwise dispose of or encumber its interest in the Property or any other security or collateral granted by the Borrower to Fannie Mae pursuant to the terms and conditions hereof, or any part thereof, or the income stream therefrom, or permit any such action or similar action to be taken except (a) with respect to

the first priority liens on the Property in favor of the Construction Lender and (b) in the normal course of sales of homes within the Project to third party buyers.

Am. Compl., Ex. C, at 10.

Paragraph 5.15 goes on to state regarding Borrower's incurrence of secured and unsecured debt that:

> The Borrower shall not hereafter incur any debt, whether secured or unsecured, except for the American National Loan and the Credit Facility, including, without limitation, any line of credit or additional debt from the Construction Lender, without the prior written consent of Fannie Mae which will not be unreasonably withheld, conditioned or delayed.

Id.

### 3. Defendants' Attempted Refinancing of the Fannie Mae Loan

At some point in 2006, Borrower and Fannie Mae began discussing the possible refinancing of the Project. On March 22, 2007, Fannie Mae employee James Kaplan ("Kaplan") sent Borrower's CFO Glenn Mordini ("Mordini") an email "requesting that [Borrower] provide us with a copies [sic] of the refinancing package that you have been providing to potential new senior and mezz lenders, including pro formas, sources and uses, etc., so that we can have a clearer sense of what your plans are." Defs.' Resp., Ex. A. Kaplan went on to state that "[w]e have been discussing a potential refinance since Sep-06, but have not seen any progress to date." Id.

In April 2007, Borrower obtained a commitment letter from Parkway Bank ("Parkway"), demonstrating Parkway's commitment to provide additional financing on the Project. See generally id., Ex. B. According to Defendants, Borrower "promptly informed Fann[ie] Mae of the Parkway Bank offer and requested Fannie Mae's approval of the Parkway Bank transaction." Id., Ex. 1 ¶ 6. On July 5, 2007, Mordini sent an email to Kaplan and Fannie Mae's consultant David Goble ("Goble"), relating that "Parkway bank has informed me today that with the

3

approval of the title report and a review of Fannie Mae's Inter-creditor agreement they can be ready to set a closing date. Id., Ex. C. Mordini went on to state, "I had requested previously that Fannie Mae give it's [sic] acceptance of refinancing this project with Parkway and we left it for further discussion and review. I would like to discuss this matter with you at your earliest convenience." Id. Mordini concluded: "In short I am seeking Fannie Mae's approval of a new senior lender." Id.

On July 10, 2007, Mordini sent another email to Kaplan and Goble stating that:

> Parkway has indicated that there are just a few items remaining before they will be ready to close. One item is the inter-creditor agreement. You have not responded to my June 6th letter and I hope that you have had the time to discuss this with others at Fannie Mae. There is much activity going on this project with the re-financing and your input is definitely necessary and your statement that you would need about 30 days has effectively been met.

Id., Ex. E, at 1.

Later that same day, Mordini sent the following email to Parkway's executive vice president Mark Shekerjian:

> Mark, as the commitment (s) validity date is approaching, July 19, 2007, I am requesting a letter from Parkway Bank extending the date for 30 days. Fannie Mae has requested that this be done to show that the commitment will not expire and they need some additional time to review and assess the terms of financing. I have requested that they provide a person for you to contact but they could not provide me with a name at this point. I will be having an additional conversation with them on Thursday and hopefully they will have made some progress by then. Please let me know when the extension letter can be provided. The sooner I can give them some assurance that it will not expire the sooner they can act upon my request to participate in this loan.

Id., Ex. F, at 2.

On July 11, 2007, Mordini emailed Goble and Kaplan a written extension of Parkway's commitment letter. See id. at 1-3. According to Defendants, after Mordini failed to receive a response from Fannie Mae regarding the Parkway refinancing, Mordini began talking to another lender, Connaught Realty Advisors ("Connaught"), about the possibility of refinancing the

4

Project by paying off the Amended Fannie Mae Loan in full. On July 18, 2007, Mordini emailed Goble certain interest bills in response to Goble's July 17, 2007 email request and informed him that, "[a]t this point I am not working on anything except trying to find a replacement for Fannie Mae." Id., Ex. G. Mordini then stated that, "[t]he reluctance of Fannie to at a minimum provide a contact for Parkway Bank indicates to me that they do not want to bother and they evaluate the risk of being farther behind a debt commitment (without any negotiation with Parkway Bank) to be far more excessive than the possibility of being paid off or the likely hood [sic] of the current Senior Lender, American National Bank, declaring the loan in default." Id. Mordini then related that Connaught indicated that they would consider the possibility of a "bridge loan." Id.

On August 2, 2007, Mordini sent an email to Goble, Kaplan and Fannie Mae employee George Trippe, informing them that Connaught "need[s] to know the amount of funding that they need to provide." Id., Ex. H. Mordini further requested that "Fannie Mae take $1,200,000 within 90 days as a final payoff amount." Goble responded to Mordini's request that same day, asking Mordini to forward Goble "any settlement statements for July so I can accurately let [Connaught] know what the discounted amounts that you are proposing [are]." Id. Goble also asked Mordini, "[H]ow many units are forecasted to close within 90 days since odds are pretty good if such an agreement is to be reached, the closing would be toward the end of 90 days so we need to know what the numbers look like in October/November." Id.[2]

According to Defendants, despite several follow-up calls to Fannie Mae, Mordini did not receive a final payoff number from Fannie Mae and, as a result, the financing from Parkway and Connaught fell through. On January 24, 2008, Fannie Mae issued a Notice of Default, Acceleration and Demand for Payment to Defendants, informing Defendants that under the terms

---

[2] The record does not reflect whether Mordini provided Fannie Mae with the requested settlement statements.

of the Amended Loan Documents two "Events of Default" had occurred: (1) Borrower failed to pay the asset management fee; and (2) there was an event of default with respect to Borrower's loans with the American National Bank of DeKalb County ("ANB"). See Am. Compl., Ex. D, at 1-2. Defendants acknowledge that they have failed to fulfill their re-payment obligations under the Guaranty. According to Fannie Mae, as of June 12, 2009, Defendants owe Fannie Mae $2,045,827.00 pursuant to the Amended Loan Documents and the Guaranty.

## B. Procedural History

Fannie Mae filed a complaint against Defendants on April 7, 2008. On August 6, 2008, Fannie Mae filed a one-count amended complaint, bringing a state-law claim for breach of guaranty against Defendants. Defendants filed their answer to the amended complaint on September 5, 2008. The answer includes four affirmative defenses: (1) that Fannie Mae's claims are barred by "unclean hands, waiver, estoppel and *pro tanto* discharge of [the] guarantees"; (2) that Fannie Mae's claims are barred by "laches, estoppel, and waiver based on its prior conduct, statements, actions, or the prior conduct, statements, and actions of ANB"; (3) that "[t]he conduct or statements of Fannie Mae or ANB has caused a *pro tanto* discharge of the Guarantees"; and (4) that "[t]he Complaint fails as a matter of law because Fannie Mae breached its duties and obligations to the Defendants." Defs.' Answer at 7. On June 23, 2009, Fannie Mae filed a motion for summary judgment against Defendants (the "Motion"). The Motion is now fully briefed and before the Court.

## II. DISCUSSION

### A. Standard

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The

nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Heft v. Moore, 351 F.3d 278, 283 (7th Cir. 2003), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact exists. See Szymanski v. Rite-Way Lawn Maintenance Co., 231 F.3d 360, 364 (7th Cir. 2000).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Stinnett v. Iron Works Gym/Executive Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. See AA Sales & Assocs., Inc. v. Coni-Seal, Inc., 550 F.3d 605, 609 (7th Cir. 2008). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 280 (1968); Spiegla v. Hull, 371 F.3d 928, 935 (7th Cir. 2004). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

The inferences construed in the nonmoving party's favor, however, must be drawn from specific facts identified in the record that support that party's position. See Szymanski, 231 F.3d at 364. Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hosp. & Med. Ctr., 328 F.3d 890, 892-93 (7th Cir. 2003) (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888-89 (1990)).

## B. Fannie Mae's Breach of Guaranty Claim

Under Illinois law, "a plaintiff establishes a prima facie case for the enforcement of a guaranty 'when the plaintiff enters proof of the original indebtedness, the debtor's default, and the guarantee.'" LaSalle Bus. Credit, Inc. v. Lapides, No. 00 C 8145, 2003 WL 722237, at *13

(N.D. Ill. March 3, 2003) (quoting Mid-City Indus. Supply Co. v. Horowitz, 476 N.E.2d 1271, 1277 (Ill. App. Ct. 1985)). Here, Defendants do not dispute that Borrower was in debt with respect to the Amended Loan Documents, that Borrower entered into default with respect to the Amended Loan Documents and that Defendants have not made prompt payment of Borrower's debt as required under the Guaranty. Rather, Defendants contend that summary judgment is not appropriate because there is a question of material fact regarding Fannie Mae's lack of good faith in evaluating and approving the two, ultimately unsuccessful, refinancing transactions. See Defs.' Resp. at 3. Defendants' argument is unavailing.

Defendants are correct that "a covenant of good faith and fair dealing is implied into every contract, absent express disavowal." Chem. Bank v. Paul, 614 N.E.2d 436, 442 (Ill. App. Ct. 1993). "To establish a breach of the duty of good faith and fair dealing, the complaining party must show that the contract vested the opposing party with discretion in performing an obligation under the contract and the opposing party exercised that discretion in bad faith, unreasonably, or in a manner inconsistent with the reasonable expectations of the parties." LaSalle Bank Nat'l Ass'n v. Paramont Props., 588 F.Supp.2d 840, 857 (N.D. Ill. 2008) (citing Baraha v. Baxter Health Care Corp., 956 F.2d 1436, 1443-45 (7th Cir. 1992)); see also Cromeens, Holloman, Sibert, Inc. v. AB Volvo, 349 F.3d 376, 395 (7th Cir. 2003) (citing N. Trust Co. v. VIII S. Michigan Assocs., 657 N.E.2d 1095, 1104 (Ill. App. Ct. 1995)) ("Illinois courts use the covenant to determine the intent of the parties where a contract is susceptible to two conflicting constructions."). Importantly, however, "Illinois law holds that parties to a contract are entitled to enforce the terms to the letter and an implied covenant of good faith cannot overrule or modify the express terms of the contract." Cromeens, 349 F.3d at 395-96.

8

Accordingly, a party "cannot be held to have breached the covenant of good faith and fair dealing for simply enforcing [a] contract[] as written." Id. at 396.

In the present case, Defendants assert that Fannie Mae's alleged delayed evaluation and approval of Defendants' two refinancing attempts "unreasonably deprived [Borrower] of its opportunity to salvage financing on the [P]roject," thereby breaching the covenant of good faith. Defs.' Resp. at 5. The Amended Fannie Mae Loan, however, explicitly barred Borrower from further encumbering the Fannie Mae Collateral. See generally Am. Compl., Ex. C ¶ 5.15. Though the Amended Fannie Mae Loan outlined two narrow exceptions to that bar, neither of those exceptions were applicable to Borrower's refinancing attempts. See id. Thus, despite the discussions between Fannie Mae and Borrower regarding the possible refinancing of the Project and the acquisition of a new senior lender, under the terms of the Amended Fannie Mae Loan such refinancings were not allowed. Therefore, whether or not Fannie Mae failed to promptly respond to Borrower's refinancing communications, the covenant of good faith is not applicable in this instance because Fannie Mae did not have discretion under the Amended Fannie Mae Loan to authorize Borrower's attempted refinancings. See LaSalle Bank, 588 F.Supp.2d at 857; see also Cromeens, 349 F.3d at 396 ("[A]n implied covenant of good faith cannot overrule or modify the express terms of the contract."). As a result, Defendants cannot use the covenant of good faith to preclude the granting of summary judgment with respect to Fannie Mae's breach of guaranty claim.

Defendants next claim that they should be excused from their obligations under the Guaranty because Fannie Mae breached ¶ 5.15 of the Amended Fannie Mae Loan, which states that Fannie Mae cannot "unreasonably with[o]ld, condition[] or delay[]" its consent to Borrower's incurrence of additional debt. Defendants fail to acknowledge, however, that ¶ 5.15

distinguishes between (1) Borrower's incurrence of additional debt that is secured by the Fannie Mae Collateral and (2) Borrower's incurrence of additional debt that is secured by security other than the Fannie Mae Collateral. As noted above, the first type of debt incursion is not allowed under ¶ 5.15. Thus, although the second sentence of ¶ 5.15 generally states that Fannie Mae cannot unreasonably withhold its consent to Borrower's incurrence of "any debt, whether secured or unsecured," that general provision is limited by the more specific preceding provision that bars Borrower's incurrence of *any* additional debt if that debt is secured by the Fannie Mae Collateral. See Am. Fed'n of State, County and Mun. Employees v. Ill. State Labor Relations Bd., 653 N.E.2d 1357, 1364 (Ill. App. Ct. 1995) ("[I]n construing a contract, courts must give effect to the more specific clause and, in so doing, should qualify or reject the more general clause as the specific clause makes necessary.").

Indeed it would be illogical to interpret the Amended Fannie Mae Loan as requiring Fannie Mae to "reasonably consent" to Borrower's incurrence of debt secured by the Fannie Mae Collateral when that method of debt incursion is prohibited under the terms of the very same contract. Thus, the "unreasonably withheld, condition or delay" language of ¶ 5.15 does not apply to Borrower's incurrence of additional debt that is secured by the Fannie Mae Collateral and, as a result, Fannie Mae's alleged delay in responding to Borrower's two refinancing attempts could not constitute a breach of the terms of the Amended Fannie Mae Loan. As there is no question of material fact as to Fannie Mae's prima facie breach of guaranty case and Defendants' affirmative defenses are unavailing, the Court grants summary judgment.

## III. CONCLUSION

For the foregoing reasons, Fannie Mae's motion for summary judgment is granted.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATED: October 5, 2009